State your name for the record. I'm sorry. My name is Steve Walker. I'm here representing the Shapiros. I thought about something that I believe it was Justice Frankfurter said 50 years ago. We should not ignore as judges what we know to be true as men. And as I listened to the arguments this morning was something that I learned. And that is that almost all these cases that are coming up to this court have some public policy underpinning the arguments that are made here. It was something that I really was either I should have been aware of but I wasn't or it's less known than it is. In this case, no matter what your decision is, there will be a public policy statement that comes out of the decision. In 2003, the Shapiro v. Paradise Valley case was considered to be one of if not the most important IDEA case that came out of any circuit last year. And in the national conferences that they have on these cases, it was the lead case that was talked about by both sides. I think that this decision that you're going to make in this case is going to be even more dramatic than that. There are public policy concerns, but I think there's conflicting public policy concerns. In Peterson v. Anderson, the court said it wasn't going to enforce a contract where one side was a non-lawyer. But if you read the decision clearly, had Anderson received the money, the court was equally clear it would not have enforced the contract for Peterson either. It was not going to enforce a contract where one lawyer had even sought to be practicing law. And again, that's a fee splitting case where there's a general public policy against an attorney receiving monies just because he refers a case to another lawyer. We don't have that situation here. What we have here is the Arizona courts have spoken in this specific case about this case, and they've spoken more than once. In Hunt v. Maricopa County, the hearing officer in that case was this Harold Murkow, the same exact hearing officer that we had in this case. It's inconceivable, and it's why I say we shouldn't ignore as judges what we know to be true as men. It's inconceivable that Harold Murkow, when he had this case, was unaware of Hunt v. Maricopa County and the issue that it relates to whether a lawyer can practice and represent people in this state who's an out-of-state lawyer or a non-lawyer. It's not possible that that didn't come up. We have my affidavit on several occasions that the discussion was had and that he authorized my practice to appear pro hac visi. It's not refuted. And actually in early briefs in this case, I challenged opposing counsel, submit your affidavit and say that that conversation didn't happen. I wanted them to. I really did because it's a flaw in my personality, because I would have deposed Harold Murkow. They refused to draw that line, to cross that line and say, you know, as a matter of evidence, here's my affidavit, that didn't happen. They have it in a footnote in the case. So the evidence before you is that Harold Murkow was faced with this decision and he responded to it. Now, the question is, did he have the authority to grant my motion to appear pro hac visi? And I contend that he did under Arizona law. We have the Arizona court in the second remand case ordering the hearing officer to permit me to appear pro hac visi and stating unequivocally that I had a constitutional right to represent the Shapiros and that he couldn't forbid or preclude me from appearing. So what we have in this case, unfortunately, with the lower court, and maybe I didn't argue the case as well as I should have, is there's an exultant form of a substance, because the substance of it is there is no basis in law or in fact that would have precluded my entry as appearing pro hac visi on behalf of the Shapiros in the first case. That's different than Peterson v. Anderson. In Peterson v. Anderson, there are no facts that would have permitted a lawyer to accept a fee in another state that had no intention of participating in the case at all. So the dynamics are exactly opposed to one another. They're the opposite ends of the same spectrum. And in Peterson, specifically, there's a reference to that by that court to say that the rule is qualified by such And it's on my reply brief at page 7. Well, at some point, maybe not Merkel, but another administrative judge said, it doesn't look like you're qualified to practice in Arizona, right? So based upon that, you went to the Superior Court and got an express order, right? Not quite, unless I misunderstood the question. In the second remand, the hearing officer did not think that he had the authority. Right. Okay. Now, part of that stems from the Merkel case when the State of Arizona then started to undergo changes in their procedures. And because of that, you went to the Superior Court, right? Superior Court entered an express order. Right. Now, in the way of a mandamus. The question, though, is I guess your position is, doesn't it amount to, well, you know, there was substantial compliance with the requirements of the Arizona rules as far as getting admitted to practice? Well. In other words, you know, in the prior proceedings when apparently, according to you, everybody agreed that, you know, you should appear or you could appear, that that was, in effect, complying with the Arizona requirement? Well, I think it not was in effect. It was in compliance at that time, just as if I had appeared in the Arizona State Court or in the Federal District Court and I made a motion to the court, may I appear pro act visi, and the court said yes, and there's no objection. The public policy aspect, which I didn't. So the issue then. So the issue here is I think you said this earlier. It's the authority of the administrative law judge, right? Whether the administrative law judge, because technically he's not a he's not a judicial officer, whether he has the authority to authorize practice in Arizona. Well, I think as a practical matter, he is a judicial officer in the sense that. That's the question, though, right? Whether he can, you know, whether his apprentice. Yes. I agree. The hearing officer thought he didn't have the authority. Right. And there's no case directly on point, is there? Well. I mean, no Arizona case directly on point. Well, I think the Arizona court that then says under the Arizona Constitution, I'm ordering you to permit him to appear pro act visi, is a case on point. And that decision was a judgment entry that was an agreed judgment entry with the attorney general from the state of Arizona in that state court. So I think we do have Arizona law on that issue. It's not a case. I'm sorry. No, no, no. I don't want to interrupt. But what more did you have to do to become admitted formally pro act visi than was done in the oral presentation before the administrative? Well, I don't think there was more that I could have done. I think in looking back on hindsight, what would have avoided this consequence is if I had submitted a letter from the clerk's office from the northern district of Arizona, of Ohio, saying I was admitted and in good standing, that there was no disciplinary proceedings against me. And that did not occur before Judge Murkoff, but it did occur at a subsequent time when you were formally. Yes. It occurred several times. Right. So they were formalities, but they were formalities with which I could not have been denied entry into the case. So the question really is, does public policy preclude payment of fees for a lawyer that, in good faith, relies upon the apparent ability of a judge to grant his entry without objection? And the message that will be sent to public policy is that fine line. And I think it's almost like this insurance case you heard earlier. Is it really fair to say that they're going to be barred from obtaining that which they're entitled to because we're going to draw a fine line in the sand that has no meaningful meaning? I was thinking of you when we were hearing that. Well, I'm glad. My daughter thought the most compelling reason was that she wants to go to Berkeley, and I said I don't think that will fly. But the message that goes out in these cases, if this is denied, is really relatively unimportant to me, but it is important to all those people that fight these causes on behalf of students, and that is if every aspect of every case is going to be litigated to where the resources out of the parents are that they can't pursue these claims, and then they can prevail on a matter of form over substance in reality with no intent to impugn the court and the importance of these things, then the message that goes out is this is a good tactic. We need to continue this. And parents such as the Shapiros, who are in a unique position to wage this battle where most are not, just can't make a fight of this in a due process hearing that's now nine years old. Wouldn't the message be get ProHoc PHA admission taken care of? Well, no, I don't think so, in all deference, because we thought that that was done, okay? We thought that Harold Merkel had the authority, and I still believe he had the authority, to grant admission under the rules that then existed, and to say that he did not because the Northern District of Ohio, which would have sent a certification saying that I was admitted properly and not under suspension or anything, would have submitted that. So we're putting form over substance. And I know there's a number of other cases where we refuse to put form over substance or exalt form over substance. This is such a case because the reality of it is there is that rule, as important as it may be, more important than permitting an out-of-state counsel to appear who has a constitutional right to represent those clients from not appearing. In other words, Mr. Merkel could not have, within the law, refused to permit my entry ProHoc ESA. There would have been no basis in fact or in law for him to do that. So are we exalting form over substance when we say, well, you didn't get the form from the clerk's office in Northern District of Ohio? But, you see, if you carry that argument to its logical conclusion, you say, well, I never even should have had to make a motion to appear ProHoc ESA because, you know, I'm qualified, and if I just had to get a letter from my local clerk, right? No. I think it's a ---- You're exalting form over substance. You have to make a motion to appear. No, because I think ---- The argument is not any different than that.  Why should he have to make a motion? It's just as you have to make a motion for a continuance or a motion for an extension of time or a motion to extend the brief. It's because the Court is paying deference to the Court and the scheme that it's created. It's not an attempt to circumvent. In other words, this case is not a case intended to circumvent the rules that the Court created, and I think that that's the difference. No, no. I don't think you should look at it, you know, whether or not it's an attempt to circumvent. The reason you have to make a motion, and maybe in your case it is pro forma, but it's not pro forma in every case, so you can make a record, so you can make your showing, and the person with the authority can decide whether the showing is sufficient. All you're saying is if the showing is sufficient, it's always pro forma. No. You know, that's putting form over substance. I'm not trying to say that. And I don't think I have to say that in this case, because I can restrict myself to the facts in this case, which don't extend to the rule that you're suggesting would take effect. I don't have to go that far to make that case, because in this case, there was no constitutional basis. And, in fact, the – but I think also there's a slight difference. In this case, in this particular case, we have a judge from the Maricopa County Court enter an order saying I have a constitutional right to represent these individuals. That's this case as it relates to this particular lawyer. And he orders the other person to do it. He didn't say first go to the Supreme Court and get this accomplished, then have him write the letter, and then have him get the certificate. He said – he ordered him to admit my entry into the case. So whatever the rule may be in a broadband kind of thing, I'm not saying the rule should be abandoned, and I'm not saying that this case would stand for that proposition. I think, though, when we're relying on the good faith representations of someone who has the position of judge who is authorizing my entry, that's far different than saying that you should dismiss the formality of making a request that the court has felt important to do. I see those as big differences, and maybe they are to me, and I'm not making it clear. But I see those as huge, huge differences. Well, I think we understand the position. You've got about five minutes left. I'll withdraw. I'll reserve the rest for rebuttal. Thank you. May it please the Court, I'm Gary Lassen for the Apley Cross-Paradise Valley Unified School District. I would concur that this is a matter of some significance. I would also concur that it could be an opportunity for this Court to issue a ruling, but on entirely different grounds and for entirely different reasons. Form over substance exists in this case, but it exists to the point I'll talk about toward the end as to who was the prevailing party. Ironically, most of the judicial determinations under IDEA have not dealt with substantive issues that are more appropriately held at an administrative level, but on procedural due process issues as here. After the longest, most laborious, most expensive due process hearing in Arizona history, the no evidence chapter 17 volumes of transcripts were reviewed by the Appellate Review Hearing Office. So was there ever any discussion of Mr. Walker's admission status? I can tell you there was discussion in my office, and I'll veer to the court, was our exposure is reduced. We don't have an Arizona-admitted attorney that's going to make a claim for attorney's that will far exceed the amount in controversy. Briefly, and if I don't get to that point, our position on the prevailing party is, while not expressly decided by the Ninth Circuit in an IDEA case, the Buck-Hannon case provides you an opportunity to provide clarity that the standard is, are the, is the relationship of the parties materially altered as a result of either a settlement or an entry? You're now arguing across the field, aren't you? Yeah. Well, I'm just, I'm hinting at that, but I think it's somewhat related. But I want to go back to the pro hoc vici because I am familiar with the issues. The standard rules that have been described as form over something that's, are simple to apply with. You associate with the local council. You go down to the court, much as was done here ultimately resulting in the February 17, 2000 entry, where a judge, not an administrative hearing officer, determines you are admitted pro hoc vici. The fees earned after that date may be subject to whatever ability to shift fees exists, not prior and not until such time as that form is complied with. Well, are fees actually mentioned in the pro hoc vici process? No. Not done pro hoc vici. Absolutely not. Dozens of times. And it may have to be done through that local council who is subject to the local rules and is deemed to be knowledgeable at the local rules. Similarly, there have been a lot of changes. I would be presumptuous to say that they're as a result of this case. But at our state level, at the national level, and at the Arizona Federal District Court level, there's a very instructive case of Galla versus United States District Court of Arizona, 349 F. 3rd 169, that recently determined whether a broad ban against all non-Arizona attorneys to appear in the Federal District Court of Arizona was within the authority of the presiding judge of the District of Arizona to impose. And a sitting judge from Hawaii said yes and gave significant reasons for that. And it's somewhat off point here, but it is instructive as to the importance of a local district or state Supreme Court to set form, yes, but procedural rules for the admission to the practice of law. The hearing officer on appeal, Bryant, determined I don't have the authority to award fees. That's beyond my authority. Mr. Merko had no authority to do that. Now, the assumption that Mr. Merko, who I have appeared in front of, I would probably say, dozens of times over the last 20 years, would remember that one case 20 years ago when the issue in a personnel action was whether the Arizona Supreme Court or Court of Appeals determined that is that the practice of law when the amount in controversy constitutes X thousand dollars, or are we going to allow the union representative to represent that person? Here, in this case, under the State Board of Education rules and regulations, it is clear that parents may be represented by an attorney licensed in the state of Arizona, may appear on behalf of themselves, or by an advocate through one of the disability advocacy forums, or even by a non-licensed advocate that is, say, a social worker or a psychologist. However, under none of those other circumstances is there any ability to get attorney's fees, only when you have an attorney admitted under the rules of the state. And it doesn't matter that if you can say that's form over substance, that's the way it is. And Judge Administrative Lodge got every judge below. And candidly, I would have to say that even I have a difficulty here on my appeal, based upon the reasoning of all the judges below on the issue of admission are right on point. Every single one. And the notion that, well, I assume that it was taken care of, that I was admitted pro hoc vici. Are you able to appear and advocate on behalf of these parents? If they want you there, you're there under this administrative set of rules. Are you there as their attorney subject to the rules and regulations, particularly, as could have been an issue here, the ethics prescriptions of the State Bar of Arizona? That's another issue. Are you there as an attorney that would require, if there are disputes regarding the conduct of the hearing, to allow you to go to a judge to resolve those disputes? We didn't have that ability to do that here. But that would have been the difference. And the difference also is that you would have had exposure for attorney's fees that candidly might have, might have resulted in a different result. Now, as far as this case being of great, great, great significance, I would have to defer, notwithstanding my role as an advocate, to those independent reviewers. Before you get started, I am confused about something, and I'll have to stop you to make sure that this is straightened out. I believe you were telling us that under this administrative procedure, the regime that applies here, the Shapiros could have been represented by a non-attorney without any concern or problem. Is that the case? That is correct. I know there was the other procedure, and here I take a step back, because I think I've gotten something mixed up, where there was an administrative law judge who required Pro Hoc Lice admission. Why was it different? What happened here? That's a very good point. And, you know, that's an unusual circumstance. And my understanding is, as we speak, the state is considering modifying it to a single-tier hearing officer issue. But the issue there was that was remanded to that ALJ by the federal district judge to act in a judicial capacity, as opposed to the initial hearing officer. And while it's not definitive, because this is a unique experience, and I know the ALJ system that exists now in Arizona, you don't have, as you do in the first instance, a state Department of Education hearing officer that can hear the hearing. On the appeal level, it goes to the Department of Administrative Law Judges, and the Arizona Supreme Court has promulgated their rules and regulations for their conduct of either de novo administrative hearings or review. And based upon their being subordinate, I believe, to the Arizona Supreme Court, that then would constitute the practice of law. But I'm not entirely sure, but I believe that to be the case at that level, and that was not always the case. And all of those hearing officers, unlike the initial hearing officers, must be attorneys licensed in Arizona. And it is true, as in this case, that Judge Bryant, they do not believe they have the authority in any instance to award fees. And the ability to award fees, you know, under the statute, when you bring an action, that means an action in court, and I would submit under the standard set forth by the U.S. Supreme Court in Buckhannon, of a material alteration of the relationship of the parties. Now, this gets to the more difficult part of my case. We've dealt with the more difficult part of Mr. Walker's case. And that is, how is it that I can say, even under a de novo review standard, that the plaintiff, Shapiro's in this case, were not the prevailing party? And that is after 17 volumes of transcript, you know, hundreds of thousands of dollars now of attorney's fees, what did we have here? We had reimbursement for one year at an out-of-state placement. Under what basis? The teacher from the CID school in St. Louis was not invited to attend the IEP meeting by the school district. And the parents, under very disputed fact circumstances, were not able or could not attend that meeting. And I am forced for the purposes of this to assume the findings of the district court that that was our fault and we lost. Okay? But let's just take the findings most favorable to the plaintiff's appellants in this case. They got one-year reimbursement of $20,000 to $30,000, period. And the hearing officer then said, but the thing that you spent 90 percent of your time on, that the school district could not provide a free appropriate public education because they did not provide this oral education for the deaf, as our lawyer from Ohio says we should, and bring in experts from Canada at great expense. No, you provided a free appropriate public education. You screwed up on these procedural form issues. Form over substance, you lost. But your program is okay, and now, parties, you're going to start from square one. Everybody's going to be there, and we'll go forward with the IEP meeting for the next year. Guess what happens? The parent says, we're not going to play. We're going to send our kid to this school. They took the one-year payment, kept that child there year after year after year, under the hope and the expectation that they would win on the appeal. They didn't. They got one-year reimbursement, and yet we're required and expected to pay close to $200,000 in attorney's fees. When the hearing officer, after 17 volumes of testimony, the most expensive by far case in Arizona special ed history, made no novel findings, no novel decisions, essentially it was a case where we lost on procedural grounds because the teacher in St. Louis, Missouri, was not invited to participate, and the parents said we couldn't make it that day, and it was our fault that we went ahead without them. But the 90% of the time was spent on you people in Arizona are incompetent and cannot provide a free appropriate public education. I submit that the record is clear. Mr. Walker can adhere to what it says about his admission status for prevailing party, but I would submit that the record is clear on both cases, that under a Buchanan standard, you could use this case for the opportunity to apply to IDEA. The fundamental relationship with the parties remained as it was. This is the classic. You know, when we talk as practitioners in administrative law, this is the classic arbitrator split the baby case. You know, I'm going to give you something, I'm going to give you something, you both win, and you start over again. That's exactly what happened here. And for us then to pay $200,000 and claim that this is the greatest special ed case of all time, I think the record speaks for itself. Thank you. All right. Thank you, Mr. Lassner. Mr. Butler. I think that we really need to get back to what's the reality, what are the actual facts in this case, rather than the representations of counsel, which I really take umbrage with. If this Court will only read its case, in the underlying case, you'll see that what he represented to be true is just not. This Court, as the Court below found in the original Shapiro case, there was substantive defects in the program and the IEP that was offered. It wasn't about some teacher this or some procedural flaw. There was substantive defects. Both the district court and this Court found that to be true. What happens is, unfortunately, I think courts, when they come to a conclusion about something, they don't want to unnecessarily beat up someone as part of it. And so it ends up as being as footnotes in a case, well, we don't reach this point because we found these procedural flaws to be true. And in deference to being nice, you have arguments like this made, which are disingenuous in my opinion, and I stand by that. I think it's incredulous at this stage of the proceedings that he would come up here and argue and say, you know what, when this issue of private visa came up, we talked about this in the office and we decided to keep our mouths shut as this thing was going on. If we talk about being an officer of the Court, do we really ‑‑ I mean, I believe that that even makes their argument for public policy reasons even weaker than it was before these oral arguments, to suggest that he could sandbag Mr. Murkow and everyone else being an officer of the Court and not saying that he believed that there was some procedural defect, but he chose not to raise it. And he not only chose not to raise it before Mr. Murkow. He said that you didn't have to be an admitted lawyer to appear at that hearing. So it didn't matter. And on the back end, if they lost their exposure to attorney's fees, it would be less. I mean, I'm not sure if I were in that position, what else I would do. Well, if ‑‑ I can only say if you believed that he didn't have a right to ‑‑ well, if it were me rather than you. If I believed that the lawyer didn't have a right to represent those clients, and I thought ‑‑ But he didn't say that. He said that you didn't have to be a lawyer to be there. So what's to object? I'm sorry. I'm sorry. I didn't finish, though. And ultimately be responsible for attorney fees somewhere down the line. Then I think that's a pretty big gamble to take as a lawyer by saying, I'm going to waive whatever right I might have to object to his presence. And I'm going to leave this issue lie quietly and see how this pans out. If we lose the case, we can raise it later. And if we don't, we just never mention it. I don't know that I think that you could do that as a lawyer, both as an officer of the court and as someone professionally and competently representing your client. My position is he doesn't have a right to object, because you don't have to be an admitted lawyer in Arizona to be there. You have nothing to say. Yes, but it was in the context of their thinking at the office that somewhere down the line they may or may not have to pay attorney fees. But the question is whether you're on the clock or you're not on the clock for purposes of fee shifting should the case turn another way. And I'm not sure that the reference to counsel as an officer of the court is relevant because I don't think that issue is relevant to the court in its ultimate substantive handling of the case. Okay. That's – I think that's what Ms. Clifton said. Oh, I have no idea what I meant. But I really – I don't understand how that relates to anything in this case. I'll move on anyway. Okay. The other part of this is, is in the original decision, excuse me, this Court determined that our appeal on the motion for State foot was smooth. If we give credence to that opinion and we believe it to be correct, then there was no other basis for us to have prevailed other than on the ultimate free appropriate public education. This case started in August of 1995. We could only present one year request for reimbursement. That was all that we were entitled to at that time. And this case has gone through the process that it's gone through based on that one year. Had we hoped to prevail on State foot? Yes. But I think, whether I agree with the opinion that it was moot or it wasn't moot, if we're to give deference to that, as I think we must, the only way that that can be moot is that it can't possibly affect the issue of attorney fees in this case. Otherwise, it wouldn't be moot. I see no other alternative to that. I also believe that there was something said, I don't know about Mr. Lassen or others, but I know if I was the subject of a Supreme Court case in my State, that would be a case I'd remember. It wouldn't be lost in the shuffle with having done 20 or 30 other labor law cases or IDEA cases. So I think that Mr. Mirka was well aware of his role in Hunt v. Maricopa County, and it wasn't lost in this case somewhere down the line. Thank you very much. All right. Thank you. Mr. Lassen, you have the opportunity for rebuttal on the cross appeal. You want to exercise that right? Let me address one point, Your Honor, and that is, you know, the record is what the record is below and in the prior cases. But the issue regarding, and perhaps I was inappropriate, but it has been my experience to be completely candid with this or any other appellate court, and when searching our minds for any discussion that did occur, our only issue was as it was characterized here by two of the three of you. And to the extent that that was misinterpreted as something more, our position is, was, and always has been that we could do nothing to prevent the parents. In hindsight, I think, you know, this is a good example of justice could have been better served to have had a local attorney assisting the expert out-of-state attorney to maybe streamline the case and not take as much time of the courts in addressing the pro hoc vici and other status. But if the word pro hoc vici at no time was ever mentioned, raised, or discussed in front of any administrative hearing officer. Thank you. All right. Thank you. Thank both counsel. This case is now submitted for decision. Thank you. The next and last case on today's calendar is University Medical Center of Southern Nevada versus Thompson, the secretary of health and human services. Good morning. I'm Edith Marshall, representing the University Medical Center of Southern Nevada.
judges: Tashima, Clifton, Leighton